UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALVADOR SHANNON, as an individual and as a successor in interest to RYAN SHANNON, | No. 2:15-CV-00967 KJM DB |
| Plaintiff, | ORDER |
| v. | |
| COUNTY OF SACRAMENTO, a government entity; TIMOTHY JONES, an individual; and JOSEPH REEVE, an individual, | |
| Defendants. | |

On March 2, 2014, Ryan Shannon was shot to death by two sheriff's deputies. Mr. Shannon's widow,[1] on her own behalf and on Mr. Shannon's behalf, now brings this civil rights action against the County and the two deputies. Defendants jointly move for summary judgment. ECF No. 84. Plaintiff opposes. ECF No. 85. Defendants also move to strike late-filed evidence. Strike Mot., ECF No. 88. The court heard the motions on December 14, 2017.

---

[1] Plaintiff now goes by "Jaclyn" and was formerly known as Salvador. *See* Opp'n, ECF No. 85 (referencing plaintiff as "Jaclyn Shannon," but noting she was formerly known as "Salvador"); *see also* Defs.' Mem., ECF No. 84-1 (noting the same).

1

ECF No. 92. After careful consideration and as explained below, the court GRANTS the motion to strike, and GRANTS in PART and DENIES IN PART the summary judgment motion.

I.   BACKGROUND

A. Disputes and Objections

The following facts derive from defendants' statement of undisputed material facts ("UMF"). ECF No. 84-2. The court treats these facts as undisputed unless otherwise stated.[2] Where a genuine dispute exists, the court draws reasonable inferences in plaintiffs' favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1868 (2014). Parties may object to the evidence cited as proving the undisputed facts, *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385-86 (9th Cir. 2010), but the parties here have not lodged any such objections.

B. Factual Background

Shortly after 2 a.m. on March 2, 2014, two uniformed Sacramento County Deputy Sheriffs, Tim Jones and Joseph Reeve, received three dispatch calls reporting either gun shots or a man with a gun near Antelope Road. UMF 1-3; Reeve Decl., ECF No. 84-6, ¶ 4. While responding to the third call, Reeve saw Mr. Shannon, a white male, walking along the road carrying something in his left hand, which Reeve thought might be a rifle. UMF 4-6.[3]

Reeve pulled his police cruiser over and turned on the floodlights. UMF 7-9. Both Reeve and Jones saw Mr. Shannon holding what looked like the buttstock[4] of an AR-15 rifle. UMF 9-10. Mr. Shannon was 10 to 20 yards from the cruiser, walking away from the deputies. Reeve Dep. 55:17-25 (Ex. C, ECF No. 84-5). Reeve and Jones drew their handguns and immediately yelled at Mr. Shannon to drop his rifle. UMF 11; Reeve Dep. 102:8-16. The

---

[2] Plaintiff has neither filed an alternative statement of facts nor responded to defendants' statement. The court refers to each listed fact as undisputed unless evidence attached to plaintiff's opposition creates a genuine material dispute.

[3] Whenever court cites only "UMF," it has verified evidence of record underlying the citation.

[4] The buttstock is the portion of a rifle's handle that, when in the ready position, rests against the shooter's shoulder. *See, e.g.*, *Your Dictionary*, http://www.yourdictionary.com/buttstock (accessed on May 22, 2018).

2

deputies had not identified themselves. As Mr. Shannon turned towards the officers, Deputy Jones shot at him. UMF 12-14; Reeve Dep. 29:12-25. The shot missed. UMF 14. Mr. Shannon dropped the rifle, but then "produced" what looked like a handgun, though neither officer saw where the handgun came from. UMF 15-16.

At this point Reeve shouted, "Sheriff's Department." UMF 17. Then Reeve repeatedly ordered Mr. Shannon to "drop the gun." UMF 17. The yelling awoke a neighbor approximately 50 to 100 yards away. UMF 20; Kumar Decl., ECF No. 84-4, ¶¶ 4-5 (witness declaring he heard officers yelling "drop the gun, drop the gun"). Reeve and Jones contend that after about three minutes of repeatedly ordering Mr. Shannon to drop the gun, Mr. Shannon pointed the second gun at them. UMF 20-21; Reeve Decl. ¶ 15. Reeve and Jones then shot Mr. Shannon immediately. UMF 22-23. He fell to the ground, unresponsive. UMF 24. Reeve and Jones promptly approached Mr. Shannon, handcuffed him, briefly searched his waistband, and then rendered medical assistance. UMF 25-26. Other officers then arrived on the scene to take over; neither Reeve nor Jones had any further contact with Mr. Shannon. UMF 26. Mr. Shannon died as a result of the gunshot wounds. *See* Autopsy Report, Ex. Q, ECF No. 86-16.

After the incident, the officers discovered the two items Mr. Shannon carried were not real weapons, they were airsoft replicas. Defs.' Mem., ECF No. 84-1, at 3 n.1; Fifth Am. Compl. ("Compl."), ECF No. 51, ¶ 27. Airsoft replicas are props that look like real rifles and handguns but do not fire real bullets. *See* Exs. A & B, ECF No. 84-6 (photos of Mr. Shannon's two airsoft replicas).

Plaintiff, Mr. Shannon's widow, now brings an excessive force claim under 42 U.S.C. § 1983[5] on Mr. Shannon's behalf, and a wrongful death claim under state law on her own behalf. Compl. ¶¶ 47-78. The deputies move for summary judgment on both claims, arguing they used reasonable force and are immune from liability.

---

[5] "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

## II. LEGAL STANDARD

A court will grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Then the burden shifts to the non-movant to show "there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must "cit[e] to particular parts of materials in the record . . .; or show [] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts"). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 247-48.

In deciding summary judgment, the court draws all inferences and views all evidence in the light most favorable to the non-movant. *Matsushita*, 475 U.S. at 587-88. "Where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant], there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)). District courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial," *Gen. Signal Corp. v. MCI Telecomms. Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)), "even in the absence of a factual dispute[,]"

1 | *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572).

### III. EXCESSIVE FORCE CLAIM

Plaintiff claims the deputies used excessive force in violation of the Fourth Amendment's prohibition on unreasonable seizures. Compl. ¶¶ 47-61. Plaintiff argues Mr. Shannon posed no immediate threat or danger, and Reeve and Jones therefore acted unreasonably by shining a spotlight in his face, which obscured his vision; shooting at him before identifying themselves as law enforcement; and fatally shooting him, even though he never pointed his gun at them. Opp'n at 13-17.

To assess whether the deputies used excessive force, the court asks "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them" and balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (citations and quotations omitted). Stated differently, courts "balance the amount of force applied against the need for that force." *Meredith v. Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003) (citation omitted). This test requires the court to "carefully consider[] the objective facts and circumstances that confronted the arresting officer . . . ." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994) (citation omitted).

Where, as here, the primary plaintiff's witness is deceased, the court "must ensure that the officer is not taking advantage of the fact that the witness most likely to contradict his story—[the decedent]—is unable to testify." *See Estate of Lopez by and through Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017) (citation and quotations omitted), *cert. denied*, 138 S. Ct. 2680 (2018); *see also Gonzalez v. City of Anaheim*, 747 F.3d 789, 794 (9th Cir. 2014) ("Where as here, the person on the receiving end of the force is killed and therefore cannot share his side of the story, 'summary judgment should be granted sparingly.'") (citation omitted). The court therefore "carefully examine[s] all the evidence in the record . . . to determine whether the officer's story is internally consistent and consistent with other known facts." *Id*. (citation omitted).

5

In deciding defendants' motion, the court closely analyzes the following aspects of the factual record as relevant to plaintiff's claim, while considering the record of the incident as a whole: (A) the initial approach by Reeve and Jones with guns drawn; (B) Jones's initial shot that missed Mr. Shannon; (C) the final, fatal shots by Reeve and Jones; and (D) the handling of Mr. Shannon's body by Reeve and Jones after the fatal shots. As explained below, material factual disputes preclude summary judgment with respect to (B), but not as to (A), (C) or (D).

A. <u>Whether the Officers' Approach with Guns Drawn was Excessive Force</u>

Could a reasonable juror find Reeve and Jones each used excessive force when they pulled up behind Mr. Shannon, immediately turned on their flood lights on and drew their guns, and, without identifying themselves as sheriffs, ordered him to drop his gun? The court concludes the answer to this question is no.

The officers were patrolling for a suspect with a gun when they saw Mr. Shannon walking down Don Julio Boulevard. UMF 5-9. Although Mr. Shannon did not match the suspect's description, Reeve testified that he thought he saw a rifle in Mr. Shannon's hands and decided to investigate further. UMF 6; Reeve Dep. 27:23-28:2. When Reeve pulled over and turned on the floodlights, he could see Mr. Shannon holding what looked to Reeve like a rifle. UMF 9; Reeve Dep. 102:21-24. The deputies then drew their handguns and ordered Mr. Shannon to drop his gun. UMF 11; Reeve Decl. ¶ 9; Reeve Dep. 55: 17-25. Under these circumstances, Reeve and Jones had a reasonable, articulable basis to forcefully approach and investigate Mr. Shannon to address the potential threat he posed to the public based on his apparent holding of a firearm. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968) (permitting law enforcement to approach, detain and use force against a suspect if supported by articulable facts tied to a legitimate investigative purpose); *see also* Cal. Pen. Code § 25850 (carrying a loaded firearm on a public street is prohibited, and peace officers may examine any firearm carried in public to determine if it is loaded).

Plaintiff argues the use of floodlights alone was unreasonable, as the lights potentially blinded Mr. Shannon and prevented him from being able to see the deputies. *See* Opp'n at 7. He cites no case law supporting such a conclusion, and the court is aware of none.

1 | *Cf. Sightler v. City of San Diego*, No. 15CV2235-LAB (DHB), 2018 WL 1524477, at *2 (S.D. Cal. Mar. 28, 2018) (discussing floodlights as factor in asking whether a seizure occurred; omitting floodlights from excessive force analysis) (citing *Kraus v. Pierce Cty.*, 793 F.2d 1105, 1108 (9th Cir. 1986)). At most, the use of floodlights is relevant to the next inquiry, which assesses whether Jones' shooting at Mr. Shannon qualifies as excessive force. No reasonable juror could find the use of floodlights here alone amounts to constitutionally excessive force.

There is no factual dispute requiring a jury to determine whether the initial decision to approach Mr. Shannon with floodlights on and guns drawn violated his constitutional rights.

### B. Whether Jones's Initial Shot Was Excessive

Could a reasonable juror find Jones acted excessively when he fired a shot at Mr. Shannon because he believed Mr. Shannon was holding a gun, even though it is undisputed the gun was not pointed at the deputies? Based on the record here, the answer is yes.

That a decedent held what appeared to be a rifle, without more, is not enough to justify the use of deadly force. *Gelhaus*, 871 F.3d at 1021-22 (jury could find officer's decision to shoot teen holding realistic toy gun as he turned to face officers was excessive; that teen had gun in his hand was not enough, as proper focus was on how he was acting with the gun); *Harris v. Roderick*, 126 F.3d 1189, 1204 (9th Cir. 1997) ("Law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed."); *Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) ("[O]fficers could not reasonably have believed the use of deadly force was lawful because [plaintiff] did not point the gun at the officers and apparently was not facing them when they shot him the first time.").

The deputies' argue unavailingly that because the bullet missed its mark this claim cannot succeed. Defs.' Mem. at 12. A shot fired is still lethal force and can be excessive even when it misses. *See Espinosa v. City & Cty. of San Francisco*, 598 F.3d 528, 537-38 (9th Cir. 2010) (explaining excessive force claim may arise when officer simply points his gun without shooting); *Tekle v. United States*, 511 F.3d 839, 845 (9th Cir. 2007) (explaining analysis focuses

on "severity of force," not resulting injury); *Robinson v. Solano Cty.*, 278 F.3d 1007, 1015, 1019 (9th Cir. 2002) ("The courts have continued to hold out the possibility that . . . the pointing of and threat to use a gun, might constitute use of excessive force, even without any touching."). If merely pointing a gun can constitute excessive force, Jones's actual shooting may also constitute excessive force.

Ultimately, whether Jones's decision here was reasonable turns on credibility determinations and resolution of factual questions. A reasonable juror could find Mr. Shannon, blinded by the floodlights, did not know the two men commanding him to drop his gun were sheriff's deputies, and thus, Mr. Shannon's decision to retain rather than drop his rifle was not reasonably perceived as a threat or an act of defiance. *See Carter v. Rogers*, 805 F.2d 1153, 1158 (4th Cir. 1986) (noting officer's failure to identify himself as a law enforcement agent diminished perceived threat where suspect did not immediately surrender).

Reeve and Jones themselves have differing recollections of the moments leading to Jones's first shot: Reeve recalls Mr. Shannon held the rifle in his left hand and turned around clockwise; Jones recalls Mr. Shannon held the rifle with both hands near his hip in a ready position and turned around counter-clockwise. Reeve Dep. 13:7-11; Jones Dep. 29:21-30:10 (Ex. D to ECF No. 84-5). These inconsistencies contribute to the factual dispute surrounding Jones's first shot, which requires particular scrutiny in fatality cases where, as here, the only witness that could support plaintiffs' version of events is unavailable to testify. *George v. Morris*, 736 F.3d 829, 834 (9th Cir. 2013) ("In cases where the best (and usually only) witness who could offer direct testimony for the plaintiff about what happened before a shooting has died, our precedent permits the decedent's version of events to be constructed circumstantially from competent expert and physical evidence, as well as from inconsistencies in the testimony of law enforcement.") (citations omitted).

Given the complexity of the record and the factual discrepancies, a juror could reasonably find Jones's decision to fire the first shot was unreasonable, and therefore a use of excessive force. Summary judgment is not warranted on plaintiff's excessive force claim in this respect.

C. <u>Whether the Fatal Shots of Reeve and Jones were Excessive</u>

The same conclusion applies to Reeve's and Jones's decision to shoot at Mr. Shannon. Determining whether this use of deadly force was constitutionally excessive requires wading through myriad factual disputes and credibility determinations, the classic province of a jury.

After Mr. Shannon dropped his first gun and immediately produced a second one, Reeve claims he identified himself as law enforcement and ordered Mr. Shannon to drop this gun. UMF 13, 16-17. For what Reeves estimates was approximately three minutes, the deputies then repeatedly ordered Mr. Shannon to put down the second gun, shouting so loudly they woke a neighbor 50 to 100 yards away. UMF 18-20; *see also* Reeve Decl. ¶ 15 (approximating the time lapse). The neighbor confirms the deputies' position that they called out to Mr. Shannon to drop the gun -- "many times," -- though he does not specify for how many minutes the commands lasted. Kumar Decl. ¶¶ 4-5. There is no evidence in the record to suggest Mr. Shannon ever dropped the gun.

The deputies contend two more facts are undisputed: (1) Mr. Shannon repeatedly yelled he wanted to die and pleaded with the deputies to shoot him, and (2) Mr. Shannon pointed his second gun at the deputies. Defs.' Mem. at 9. But no evidence, besides the deputies' own testimony, corroborates either fact. Given the credibility determination that such one-sided testimony inherently requires, a reasonable juror could reject it. *See George*, 736 F.3d at 834 (emphasizing need to look beyond officers' testimony when main plaintiff's witness is dead). Also, the neighbor who heard the deputies order Mr. Shannon to drop his gun never mentioned, nor was he asked, what Mr. Shannon said or if he trained his gun on the deputies. *See generally* Kumar Decl. The court treats these facts as disputed.

On this record, a reasonable juror could find both deputies' firing at Mr. Shannon when they did was constitutionally unreasonable. That Shannon held a gun and refused to drop it does not automatically justify deadly force. Although the deputies did not need to wait for Mr. Shannon to shoot, *George*, 736 F.3d at 838, a reasonable juror could still find the deputies acted prematurely under the circumstances. Relatedly, a reasonable juror could reject Reeve's

9

uncorroborated testimony that the deputies yelled at Mr. Shannon to drop his gun for approximately three minutes. Either three minutes or a shorter time lapse could bolster a finding that the deputies fatally shot Mr. Shannon prematurely. With no testimony corroborating either deputies' version of events, a reasonable juror could find Mr. Shannon never aimed his weapon at the officers or otherwise escalated the confrontation. So construed, this case is easily distinguished from a scenario framed by the dissent in *Gelhaus*, 871 F.3d at 1027-28 ( J. Wallace, dissenting), in which the decedent's gun was "rising" to face the officers the moment before they opened fire, which if true, the majority essentially agreed would warrant granting summary judgment. *Id.* at 1014 (reviewing argument made by dissent). So construed this case is also unlike *Ramirez v. Knoulton*, 542 F.3d 124, 131 (5th Cir. 2008), in which the armed suspect not only disobeyed commands to drop his gun, but also made a threatening gesture with the gun. As explained above, holding a gun, without any further provocation, is not enough to justify deadly force. *See Gelhaus*, 871 F.3d at 1014; *Ramirez*, 542 F.3d at 131.

Although there are issues for a jury to try, the court nonetheless rejects plaintiff's untenable framing of the facts in part in their argument that Mr. Shannon never had a gun, and the guns recovered from the scene were planted by the deputies. Opp'n at 8. Plaintiff offers no evidence to support this bald accusation, and the record contradicts it. The first time the officers were in a position to plausibly plant a weapon was after Mr. Shannon was on the ground, unresponsive, but by then the neighbor, Mr. Kumar, was watching the scene. *See* Kumar Decl. ¶ 4 (describing the moments leading up to the fatal shots). Other deputies began arriving as Reeve and Jones first approached Mr. Shannon's fallen body, leaving Reeve and Jones no time to discreetly plant anything. UMF 25. Given the consistent evidence to the contrary beyond the officers' testimony alone, plaintiff's accusation is pure speculation and cannot ward off summary judgment. *See British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978) (explaining party opposing summary judgment must introduce more than "[a] mere scintilla of evidence . . . for a jury is permitted to draw only those inferences of which the evidence is reasonably susceptible; it may not resort to speculation.") (citation omitted).

The court also rejects plaintiff's attempt to impeach the neighbor Kumar's declaration. Plaintiff contends the declaration is a sham and submits a belated, single-page, unsigned and unsworn summary of a purported phone conversation in which Kumar allegedly recanted the declaration. Opp'n at 14. This summary is subject to being stricken for its belated filing, as defendants argue, Strike Mot.; *see also* E.D. Cal. L.R. 78-230, but also lacks any weight given its conclusory, wholly unverifiable nature. The court GRANTS defendants' motion to strike plaintiff's filing. No admissible evidence, including circumstantial evidence, supports plaintiff's theory that a second gun was planted.

Even with these clarifications, triable issues remain as to whether the deputies' fatal shots were excessive.

### D. Whether the Deputies Beat Mr. Shannon's Body After Shooting Him

Plaintiff also contends that after the shooting, the deputies used excessive force on Mr. Shannon's body, causing contusions and abrasions. *See* Compl. ¶¶ 33, 53. But there is no evidence before the court to support this theory.

Although Mr. Shannon's autopsy report shows contusions and abrasions to his head, face, and elbow, § 1983 liability cannot be imposed without showing a defendant's personal participation. *See* Autopsy Report at 2-3 (describing marks on body generally); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). There must be some evidence linking each named defendant to specific actions. *Jones v. Williams*, 297 F.3d 930, 937 (9th Cir. 2002).

As with plaintiff's unsupported theory that the deputies planted the toy gun replicas, no evidence raises a factual dispute as to whether the deputies attacked Mr. Shannon's corpse after he died. Specifically, no third-party witness, including Mr. Kumar, has testified to seeing or hearing any such beating, and other deputies arrived on the scene immediately after the shots were fired, leaving Reeve and Jones no opportunity to engage in any form of mutilation. UMF 25. The undisputed record supports only the conclusion that Reeve and Jones touched Mr. Shannon's body to handcuff him, search him, and briefly render medical aid before other deputies took over. UMF 25-26. With nothing but speculation linking Reeve or Jones to the bruises,

contusions and abrasions noted in Mr. Shannon's autopsy, this part of plaintiff's claim cannot survive summary judgment. *See British Airways*, 585 F.2d at 952.

## IV. QUALIFIED IMMUNITY

As explained above, jury questions regarding excessive force remain as to (1) Jones's initial shot and (2) both deputies' fatal shots. Defendants argue they are nonetheless immune from liability because, even if they acted excessively, the applicable constitutional standards were not so "clearly established" at the time that reasonable officers confronting the same scenario would have known their response was unlawful. Defs.' Mem. at 15-16.

Qualified immunity shields government officials from liability for civil damages if they were performing their discretionary duties in a way that did not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine balances "the need to hold [officers] accountable when they exercise power irresponsibly and the need to shield [officers] from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citations and quotations omitted). It has been said this form of immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (citation omitted).

Courts analyze qualified immunity through a two-pronged test. The first prong asks whether, viewed in the light most favorable to plaintiffs, "the facts alleged show the [defendants'] conduct violated a constitutional right"; the second prong asks whether that constitutional right was "clearly established" at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from in Pearson*, 555 U.S. at 236 (reconsidering *Saucier*'s procedural order; deciding two prongs can be addressed in any sequence).

After reversing "a number of . . . federal courts in qualified immunity cases," the Supreme Court recently "reiterate[d] the longstanding principle that 'clearly established law' should not be defined at a high level of generality"; instead, it must be "particularized' to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (citation and quotations omitted). Qualified immunity applies unless the law was sufficiently clear that every reasonable official

confronting the same scenario at that time would have understood the specific response was unlawful. *Id.*

Here, the court's analysis above satisfies prong one, as the facts and evidence, construed in plaintiff's favor, establish two potential violations of plaintiff's Fourth Amendment guarantee against being subjected to constitutionally excessive force. *See Pearson*, 555 U.S. at 236 (court may start with either prong). The sole question remaining is whether the deputies, when they shot Mr. Shannon, were on notice that, in the scenario they faced, their conduct was excessive under the established law as it existed on March 2, 2014. As explained below, immunity depends on how a factfinder weighs the officers' credibility and the competing evidence regarding what exactly happened on the night of the officers' encounter with Mr. Shannon. Granting or denying qualified immunity, based on this record, would be premature.

A. Jones's Initial Shot

Whether Jones is entitled to qualified immunity depends on how the jury resolves the core factual disputes related to his firing the first shot. *See Gelhaus*, 871 F.3d at 1021 (deciding the same). Although qualified immunity should generally be determined at the earliest possible point in litigation, granting summary judgment "'is inappropriate where a genuine issue of material fact prevents a determination of qualified immunity until after trial on the merits.'" *Id.* (quoting *Liston v. Cty. of Riverside*, 120 F.3d 965, 975 (9th Cir. 1997)).

Here, the jury could find that Mr. Shannon was not blinded by the floodlights, that Mr. Shannon knew the command to drop his gun came from deputies, and that Mr. Shannon turned towards the deputies with his gun in a threatening position if not pointed directly at them. If the jury returned such a verdict, Jones would likely be entitled to qualified immunity. Conversely, if plaintiff's version of the facts prevails and the jury concludes Mr. Shannon posed no imminent threat to the deputies, then his right to be free of excessive force in this context was clearly established at the time of the shooting, as outlined in *Harris*, 126 F.3d at 1204 ("Law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed."), and *Curnow*, 952 F.2d at 325 ("officers could not reasonably have believed the use of deadly force was lawful because [plaintiff] did not

13

point the gun at the officers and apparently was not facing them when they shot him the first time.").

Because Jones's entitlement to qualified immunity depends on disputed facts that must be resolved by a jury, granting summary judgment on this question would be premature. *See Gelhaus*, 871 F.3d at 1021 (deciding the same); *Wilkins v. City of Oakland*, 350 F.3d 949, 956 (9th Cir. 2003) ("Where the officers' entitlement to qualified immunity depends on the resolution of disputed issues of fact in their favor, and against the non-moving party, summary judgment is not appropriate."). Although mindful of the Supreme Court's emphasis on qualified immunity as "an immunity from suit rather than a mere defense … [that] is effectively lost" once a case goes to trial, and the Court's emphasis on "the importance of resolving immunity questions at the earliest possible stage in litigation," *see Pearson*, 555 U.S. at 232 (citations and quotations omitted), this court is not able to resolve qualified immunity in this case on the current record. This court is not alone among trial courts to reach such a conclusion in factually complex cases. S*ee Garcia v. Cty. of San Diego*, No. 15-CV-189 JLS (NLS), 2018 WL 3019931, at *8 n.9 (S.D. Cal. June 18, 2018) ("Because the Court has determined the issue of whether the social workers' beliefs and actions were reasonable involves disputed issues of material fact, the Court does not make a qualified immunity determination here."); *Salinas-Ibarra v. Ellis*, No. 17-CV-01137-BLF, 2018 WL 1510271, at *10 (N.D. Cal. Mar. 27, 2018) ("the question of qualified immunity is premature in light of the disputed material facts that can only be resolved by a jury.").

The court DENIES defendants' motion for summary judgment on the excessive force claim to the extent it derives from Jones's initial shot.

B.  Fatal Shots

The same approach set out above guides the court's qualified immunity analysis with respect to the deputies' decision to fatally shoot Mr. Shannon. Whether either deputy is entitled to qualified immunity for this use of force depends on how the jury resolves core factual disputes regarding Mr. Shannon's conduct immediately before the deputies' fatal shots were fired. *See Gelhaus*, 871 F.3d at 1021 (deciding same).

14

The jury may find that Mr. Shannon refused to drop his second gun, despite repeated commands to do so; that he intended to commit suicide by cop and yelled at and taunted the officers to shoot him; that he refused, for approximately three minutes, to respond to the deputies' commands to disarm; and that the deputies' simultaneous, split-second decision to shoot was a response to Mr. Shannon's pointing his gun directly at the them. After such a verdict, the officers would likely be entitled to qualified immunity because a reasonable officer could find using deadly force in that scenario was reasonable. *Harris*, 126 F.3d at 1202; *Curnow*, 952 F.2d at 325.

But again, the jury could believe a different narrative: That Mr. Shannon never yelled suicidal commands; that the deputies' estimate that they ordered him to disarm for three minutes before fatally shooting him was inaccurate; and that Mr. Shannon never pointed his gun at the deputies. In March 2014, it was clearly established that deadly force is unjustifiable when the only provocation is holding a gun in a non-threatening position. *George*, 736 F.3d at 838 (finding deadly force constitutionally excessive where deputies shot the decedent "without objective provocation" while he used his walker, with his gun trained on the ground); *Harris*, 126 F.3d at 1204; *Curnow*, 952 F.2d at 325; *see also Gelhaus*, 871 F.3d at 1018-19 (deciding same; relying on *George*, *Harris* and *Curnow* to analyze state of law in October 2013).

Because the deputies' entitlement to qualified immunity depends heavily on whether the fact finder believes uncorroborated testimony, granting summary judgment on this question here too would be premature. *See Gelhaus*, 871 F.3d at 1021 (deciding same); *Wilkins*, 350 F.3d at 956; *Martinez*, 323 F.3d at 1184-85; *Santos*, 287 F.3d at 855 n.12; *Garcia*, 2018 WL 3019931, at *8 n.9; *Salinas-Ibarra*, 2018 WL 1510271, at *10.

The court DENIES defendants' motion for summary judgment on the excessive force claim to the extent it derives from Jones's and Reeve's fatal shots.

V. STATE WRONGFUL DEATH CLAIM

Plaintiff also contends Reeve, Jones and the County are liable for wrongful death under state law. Compl. ¶¶ 70-78 (citing California Code of Civil Procedure § 377.60). The deputies contend they are immune from liability under state law because the shooting was a

1  "justifiable homicide," and the County cannot be vicariously liable. Defs.' Mem. at 18-19 (citing
2  California Penal Code § 196(2)).

3  Justifiable homicide is a privileged act, meaning although the killing would
4  ordinarily be a tort, the particular circumstances of the killing shield the actor from liability.
5  *Martinez v. Cty. of Los Angeles*, 47 Cal. App. 4th 334, 338 (1996) ("There can be no civil liability
6  under California law as the result of a justifiable homicide."). A homicide is justifiable under
7  California Penal Code section 196 when "the circumstances reasonably created a fear of death or
8  serious bodily harm to the officer or to another." *Id.* (citations and quotations omitted).

9  Here, the only shots relevant to this claim are the second set of fatal shots. Jones's
10 initial shot, although potentially unreasonable, did not cause Mr. Shannon's death and so cannot
11 be the basis for his wrongful death claim. As explained above, the officers claim they shot Mr.
12 Shannon because he was holding what looked like a handgun, had repeatedly defied the deputies'
13 commands to disarm and showed no signs of surrendering. UMF 10, 16, 18-19. The deputies did
14 not fire their fatal shots precipitously; for approximately three minutes, they claim they tried to
15 talk Mr. Shannon into dropping the second gun. UMF 20-23. Nonetheless, as shown above,
16 there are triable issues as to whether Mr. Shannon posed a reasonable fear of death or serious
17 bodily harm to the officers. If he did, Mr. Shannon's fatality was justifiable under the law. *See*
18 *Martinez*, 47 Cal. App. 4th at 349-50 ("Since we have already determined [the officers] acted
19 reasonably in shooting Martinez, his death was justified under Penal Code section 196 and
20 appellants' state law wrongful death claim is therefore barred as to them). But if he did not,
21 section 196 would not bar plaintiff's wrongful death claim. Given the record, in which virtually
22 all evidence comes from the officers' potentially self-serving testimony, the court DENIES
23 summary judgment for Reeve and Jones on this claim.

24 Although the deputies are potentially liable for their use of deadly force, there is
25 no basis for holding the County vicariously liable. Direct tort liability of public entities "must be
26 based on a specific statute declaring them liable, or at least creating some specific duty of care."
27 *Eastburn v. Reg'l Fire Prot. Auth.*, 31 Cal. 4th 1175, 1183 (2003). Without such a statute, the
28 County is immune from liability. It is plaintiff's responsibility to show immunity does not apply,

yet plaintiff has not done so here. *Soliz v. Williams*, 74 Cal. App. 4th 577, 585 (1999). Accordingly, the court GRANTS summary judgment for the County on plaintiff's wrongful death claim.

VI. CONCLUSION

The court resolves defendants' summary judgment motion as follows: Summary judgment on plaintiff's 42 U.S.C. § 1983 excessive force claim is DENIED; summary judgment on plaintiff's wrongful death claim is GRANTED only as to the COUNTY, but DENIED as to officers Jones and Reeve. The court also GRANTS defendants' motion to strike one late-filed document, noted above, but DENIES as MOOT the remainder of the motion to strike. This resolves ECF Nos. 84, 88.

A jury trial will be held on the remaining claim against Jones and Reeve. A final pretrial conference is set for **September 27, 2018 at 3:00 p.m.**, with a joint pretrial statement due 21 days prior.

IT IS SO ORDERED.

DATED: August 13, 2018.

_____
UNITED STATES DISTRICT JUDGE